**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                                                    PLAINTIFF

v.                                              NO. 4:06CR00055-02 JLH

ARIZONA LOGAN                                                                                                      DEFENDANT

**OPINION AND ORDER**

Arizona Logan has filed a petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Logan was indicted in a three count indictment on February 8, 2006. Count 1 charged Logan and Tracey Jones with bank robbery by force and violence in violation of 18 U.S.C. § 2113(a) and (d). Count 2 charged Logan with using a firearm in connection with a crime of violence, *i.e.*, armed bank robbery, in violation of 18 U.S.C. § 924(c). Count 3 charged Logan with possession of a firearm after having previously been convicted of a felony drug offense in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). All of the charges stem from an armed robbery of The Capital Bank in Little Rock, Arkansas, on December 20, 2005.

Logan entered into a plea agreement with the government pursuant to which he pled guilty to Count 1 and the government dismissed Counts 2 and 3. The plea agreement provided that the base offense level for the offense of conviction under U.S.S.G. § 2B3.1 would be 20. In addition, the plea agreement provided for a two-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(1) because the property of a financial institution was taken, a six-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(B) based on the fact that a firearm "was otherwise used," *i.e.*, used to injure a victim, a two level enhancement pursuant to U.S.S.G. § 2B3.1(b)(3)(A) because two individuals sustained bodily injury during the robbery, and a two-level enhancement pursuant to U.S.S.G.

§ 2B3.1(b)(7)(C) because the amount taken was greater than $50,000 but not greater than $250,000. The plea agreement also provided for a two-level reduction for acceptance of responsibility and stated that, if the offense level were 16 or greater, a determination would be made at the time of the sentencing as to whether the United States would move for a third point reduction.

Consistent with the stipulations in the plea agreement, the presentence report provided for a base offense level of 20, enhancements totaling 12 levels for an adjusted offense level of 32, and a two level reduction for acceptance of responsibility, making the final offense level 30. Logan had eight criminal history points, so his criminal history category was IV. The presentence report stated that Logan hit the bank president, Kyle Patton, in the back of the head, knocking him unconscious, and that Logan struck a bank employee named Lori Drobney Tankersley on the side of the face, knocking her to the ground.

Logan's attorney, Leslie R. Ablondi, went over the presentence report with him and then, at Logan's request, wrote a letter to the author of the presentence report objecting to several paragraphs. One of the objections stated, "Mr. Logan is adamant that he did not strike the male in the head with the pistol and that he slapped Ms. Tankersley with an open palm."

Before the sentencing hearing, the government filed a notice stating that if the evidence established that Logan in fact had assaulted bank employees and testified to the contrary at the sentencing hearing, the government would move to withdraw all points for acceptance of responsibility.

At the sentencing hearing, Ablondi informed the Court on Logan's behalf that Logan was withdrawing all of his objections to the presentence report. The United States then moved for the third point for acceptance of responsibility, which was granted, making the final offense level 29.

With an offense level of 29 and a criminal history category of IV, Logan's guidelines sentencing range for imprisonment was 121 to 151 months. The Court sentenced Logan to a term of 136 months in the Bureau of Prisons.

Logan appealed his sentence. The Eighth Circuit affirmed in an unpublished opinion entered on December 21, 2007. The Eighth Circuit issued its mandate on January 17, 2008. Logan filed his *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 on December 9, 2008.

Logan's § 2255 petition asserts three grounds for relief. First, Logan contends that his attorney was ineffective for failing to investigate the enhancements in the presentence report based on the allegations that a firearm was "otherwise used" and that two individuals sustained bodily injury during the robbery. Logan asserts that there is nothing in the record as evidence that supports the government's contention that any of the bank employees was struck with a weapon. Second, Logan contends that his attorney was ineffective for failing to negotiate conditions in the plea agreement to protect him from the government's use of the conduct in the dismissed counts to enhance the sentence. Logan says that his attorney led him to believe that by pleading guilty the government would drop Counts 2 and 3, but then his attorney failed to protect him from the use of the conduct in Counts 2 and 3 to enhance the sentence. Third, Logan contends that his attorney was ineffective for allowing the government effectively to limit the scope of Rule 32 of the Federal Rules of Criminal Procedure inasmuch as the government issued the notice that prevented Logan from objecting to or otherwise denying the allegations that the bank employees were struck with a weapon or otherwise injured during the robbery. In addition, Logan argues that the government promised to move for a downward departure if he provided substantial assistance but then failed to so move after he provided assistance.

The Court previously denied Logan's petition but then set that order aside when Logan pointed out that the Court failed to appoint a lawyer to represent him as required by Rule 8(c) of the Rules Governing Section 2255 Proceedings. The Court appointed a lawyer to represent Logan and then conducted a second evidentiary hearing. The findings herein are based on the evidence presented at that second hearing.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his lawyer's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Proving that counsel was deficient "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689, 104 S. Ct. at 2065. Because of the distorting effects of hindsight and the difficulty of viewing counsel's representation of the client from the perspective available to defense counsel at the time of trial, "[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. Proving that the deficient performance prejudiced the defense requires showing that there is a reasonable probability that, but for defense counsel's mistakes, the result of the proceeding would have been different. *Id*. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695, 104 S. Ct. at 2068-69. In determining whether there is a reasonable probability that but for counsel's mistakes the result would have been different, the Court must consider the totality of the evidence

before the judge or the jury. *Id*. The *Strickland* two-part standard also applies to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). When the claim of ineffective assistance of counsel arises out of the plea process, the prejudice element "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id*. An increased prison term may constitute prejudice under the *Strickland* standard. *Glover v. United States*, 531 U.S. 198, 121 S. Ct. 696, 148 L. Ed. 2d 604 (2001).

As to the first ground for relief, the Court finds that Ablondi adequately investigated the evidence pertaining to the enhancements for the use of a firearm during the robbery and for bodily injury occurring during the robbery. Ablondi testified that he reviewed the government's file, which included transcripts of recorded statements from Kyle Patton, Lori Tankersley, and Tracey Jones. He also viewed the surveillance video of the robbery. The evidence established that two men committed the robbery, a taller man identified after the robbery as Logan, and a shorter man, identified after the robbery as Jones. The taller one – Logan – was carrying a pistol.

Patton gave a statement after the robbery and said that one of the robbers, whom he identified as the taller one, "cracked" him in the back of the head and caused him to black out momentarily. When interviewed after the incident, he said that his head was still hurting. Patton said that the taller of the two robbers – the one who cracked him in the back of the head – had a gun and pointed it at him. It appears from the surveillance video that Logan poked Patton in the back of the head with the pistol. The surveillance video shows that Patton was rubbing the back of his head immediately after the robbers left the bank and he got off the floor.

Tankersley said in her statement that the taller of the two robbers (Logan) hit her in the face. The surveillance video shows Tankersley's head spin and her hair fly up as though she had been struck. After the robbery, the side of her face was red and swollen where she had been hit. She also said that the taller of the two robbers (Logan) had a gun, and that when Patton could not open the safe, "they struck him in the back of [the] head we think with the gun. [We] think it was his pistol that hit him when we heard the crack and he fell to the ground . . . ."

Jones said in his statement that he accompanied Logan into the bank and participated in the robbery. He said that Logan had the gun.

The surveillance video showed the events of the robbery and was consistent with the statements of Patton, Tankersley, and Jones.

It is not true, therefore, that Ablondi was ineffective for failing to investigate the enhancements for the use of a firearm and for injury to two persons. He conducted an appropriate investigation, including reviewing witness statements and the surveillance video. The witness statements and the surveillance video confirm that the enhancements were appropriate under the sentencing guidelines. U.S.S.G. § 2B3.1(b)(2) provides for an enhancement of seven levels if a firearm was discharged, an enhancement of six levels if a firearm "was otherwise used," and an enhancement of five levels if a firearm "was brandished or possessed." Because evidence indicated that Logan struck Patton in the back of the head with the pistol, a firearm was "otherwise used," so the six level enhancement was supported by the evidence. U.S.S.G. § 2B3.1(3) provides for a two-level enhancement if any victim suffers bodily injury, a four-level enhancement if any victim suffers serious bodily injury, and a six-level enhancement if any victim suffers permanent or life-threatening bodily injury. "Bodily injury" involves "any significant injury; *e.g.*, an injury that is painful and

obvious . . . ." Application Note 1(B) to U.S.S.G. § 1B1.1. Both Patton and Tankersley suffered bodily injury by that definition. Hence, the two-level enhancement was appropriate. Logan's first ground for relief is without merit.

Logan's second ground for relief is that Ablondi was ineffective for failing to negotiate a plea agreement that would have protected him from the use of the conduct in the dismissed counts to enhance his sentence. However, Assistant United States Attorney Anne Gardner, who serves on a committee that reviews plea agreements, testified that the policy of the United States Attorney provides that, because 18 U.S.C. § 924(c) requires that a sentence of five years be imposed consecutive to any other counts, in any plea agreement pursuant to which a charge of violating that statute is dismissed the defendant must agree to an enhancement for the firearm under the sentencing guidelines. In other words, the Assistant United States Attorney prosecuting Logan did not have authority to agree to a deal in which the gun count would be dismissed and in which the enhancement under U.S.S.G. § 2B3.1(b)(2) would not be imposed. Thus, Ablondi was not ineffective for failing to negotiate a plea agreement that would have prohibited the government from using the firearm as an enhancement; indeed, he could not have negotiated such an agreement. The evidence shows that the government would not have agreed to the kind of plea agreement that Logan now contends his lawyer should have obtained for him.

In arguing his second ground for relief, Logan says that his attorney "should have argued Jenks [sic] Violations, if the government had witness statements that they intended to use at trial, filed the proper pretrial motions and negotiated a better deal for the Defendant." The Jencks Act, 18 U.S.C. § 3500, provides that after a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any

statement by the witness relating to the subject matter of the witness's testimony. Because Logan's case never went to trial, there was never an occasion for his attorney to invoke the Jencks Act. Furthermore, the government either provided Ablondi with copies of the witness statements or permitted him to read the statements. Ablondi's testimony makes clear that, before the plea agreement, he had reviewed the relevant witness statements and knew what to expect the testimony of the witnesses to be. Ablondi sought and received all of the discovery material to which Logan was entitled, so there were no motions for discovery to be filed. Logan also says that Ablondi was ineffective for failing to file a suppression motion, but there is no evidence that any such motion would have been meritorious.

The ultimate decision on whether to accept the plea agreement was Logan's, not Ablondi's. The transcript of the plea colloquy shows that the Assistant United States Attorney summarized the plea agreement on the record and specifically mentioned the enhancements when doing so, after which Logan agreed that she had accurately summarized the plea agreement. Logan stated under oath that he read and discussed the plea agreement with Ablondi before he signed it, that he understood the terms of the plea agreement, that in signing it he intended to agree to all of its terms, and that he signed it voluntarily. Logan was not required by anyone to accept the plea agreement. He apparently believed at that time that the plea agreement was the best deal that he could get under the circumstances. In hindsight, Logan wishes he had a better deal, and the Court cannot blame him for that, but there is no evidence that he could have obtained a better deal than the one he obtained.

Logan's third point is closely related to the first two. Essentially, he contends that Ablondi was ineffective for failing to challenge the enhancements at the sentencing hearing. He argues that Ablondi allowed the government to limit the scope of Rule 32 because the government filed the

sentencing notice stating that if Logan objected to the enhancements, if Logan testified that he did not brandish a gun or strike an employee of the bank, and if the government proved that he had done those things, then the government would move to take away his points for acceptance of responsibility. Ablondi testified that he explained the situation to Logan before the sentencing hearing, and Logan decided that it would be better to abandon those objections rather than run the risk of losing his points for acceptance of responsibility. The evidence established that Patton and Tankersley were present at the sentencing hearing and prepared to testify. The evidence also established that Jones was available to testify at Logan's sentencing hearing. The government was also prepared to introduce into evidence the surveillance video. The testimony of Patton and Tankersley, along with the surveillance video, would have proved that the enhancements were proper. Furthermore, Logan agreed to the enhancements in the plea agreement in return for which the government dismissed Counts 2 and 3. The Court would not have allowed Logan to agree to the enhancements in return for dismissal of Counts 2 and 3 but then renege on his agreement to the enhancements at sentencing. Whether the Court would have taken away Logan's two points for acceptance of responsibility is an open question, but undoubtedly the government would have declined to have moved for the third point, which would have resulted in a sentencing range of 135 to 168 months, rather than 121 to 151 months. If Logan had maintained his objections at the sentencing hearing, his objections would have been overruled, he would not have received the third point for acceptance of responsibility, and his guidelines sentencing range would have been greater than the range contemplated by the plea agreement and found by the Court. At a minimum, the range would have been 135 to 168 months, and it might have been higher, depending on whether the Court took away Logan's two points for acceptance of responsibility. Ablondi advised Logan to waive his

objections to the presentence report, which was sound advice. Logan prudently followed Ablondi's advice, but it was his decision, not Ablondi's, to waive the objections. Moreover, Logan told the Court at the sentencing hearing that he was satisfied with the work that Ablondi had done for him. The arguments in his § 2255 petition are contrary to what he told the Court at sentencing.

Logan has also asserted that he provided substantial assistance but the government failed to move for a downward departure and therefore violated the plea agreement. The plea agreement provides, in pertinent part:

> If, in the sole and absolute discretion of the United States, the defendant's cooperation constitutes substantial assistance within the meaning of the Sentencing Guidelines, the United States will make a motion for a sentence reduction.

A district court may review the government's refusal to move for a downward departure based on substantial assistance only if the refusal was prompted by an unconstitutional motive, such as the defendant's race or religion or was not rationally related to a legitimate governmental objective. *United States v. Davis*, 583 F.3d 1081, 1098 (8th Cir. 2009). There is no evidence that the government's refusal to make a substantial assistance motion was prompted by an unconstitutional motive. The evidence indicated that Logan said that he saw a law enforcement officer take part of the proceeds of the bank robbery, but a polygraph indicated deception. Logan failed to show that the refusal of the government to make a substantial assistance motion was not rationally related to a legitimate governmental objective.

In summary, the Court finds that all of Logan's arguments that his counsel was ineffective are without merit. Ablondi provided effective representation. In view of the evidence against Logan, there is no basis for any of Logan's arguments to the effect that Ablondi should have obtained for him a lesser sentence. Logan's petition is therefore denied. Document #68. Logan has failed to

make a substantial showing that he was denied a constitutional right, so the Court denies a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) and Rule 11(a) of the Rules Governing Section 2255 Proceedings.

    IT IS SO ORDERED this 14th day of April, 2010.

                                        _____
                                        J. LEON HOLMES
                                        UNITED STATES DISTRICT JUDGE